IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AARON OUTLAW, #353453             *
         Plaintiff,
v.                                *   CIVIL ACTION NO. DKC-09-1704

CORRECTIONAL MEDICAL SERVICES,    *
 et al.
         Defendants.              *
                                     ***

**MEMORANDUM OPINION**

I. *Background*

This 42 U.S.C. § 1983 prisoner civil rights action seeks damages for pain and suffering and a court order requiring that Plaintiff's medical problems be "addressed and resolved." At the time he filed this action, Aaron Outlaw ("Outlaw") was a Division of Correction ("DOC") inmate housed at the Maryland Correctional Training Center.[1] The Complaint alleges that due to failing kidneys Outlaw is constantly in severe pain and requires pain medication. Paper No. 1. He claims that the problem worsened when Physician's Assistant ("P.A.") Kevin McDonald assessed his condition on March 5, 2009, and determined that his kidneys were bleeding and producing protein. Outlaw alleges that McDonald prescribed pain medication but did not take added steps to insure that it was received. He complains that this resulted in his being denied medical treatment and medication.

Defendants Correctional Medical Services, Inc. ("CMS") and McDonald filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Paper No 7. Outlaw was provided notice of the filing pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and

---

[1] Defendants claim that Outlaw was released from confinement in September of 2009.

informed of his right to present opposition materials.[2]  Paper Nos. 8 & 14.  To date, no response has been filed.  A hearing is not needed to resolve the constitutional issues presented in the matter.  *See* Local Rule 105.6. (D. Md. 2009).  For reasons which follow, Defendants' Motion shall be granted.

II. *Standard of Review*

*Motion to Dismiss*

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964-65 (2007).  "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'" *Id*. at 557-558  (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S.Ct. 1937, 1949 (2009).   In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *Takacs v. Fiore*,  473 F.Supp.2d  647, 651 (D. Md.  2007).

---

[2]     Outlaw failed to keep his current address on record after his release from the DOC.  This resulted in the dismissal of his case on November 13, 2009.  On January 4, 2010, the court construed Outlaw's correspondence as a Motion to Reopen, granted same, and provided him seventeen days to file his opposition.  Paper Nos. 13 & 14.

*Motion for Summary Judgment*

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In alleging a denial of his Eighth Amendment right to necessary medical care, Outlaw must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If he proves this first element, Outlaw must then prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendants. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with

3

knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Medical staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

III.     *Analysis*

CMS argues that as a corporate entity, it cannot be held liable under § 1983. It is well settled law that a claimant may not recover against a municipality on a *respondeat superior* theory under 42 U.S.C. § 1983. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690-695 (1978). To the extent the Complaint names CMS solely upon vicarious liability, circuit law is clear. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). CMS's Motion to Dismiss will be granted.

The medical Defendants alternatively argue that Outlaw received constitutionally adequate medical care. According to their materials, Outlaw has polycythemia vera (PV"), a disorder of the bone marrow that causes it to produce too many white blood cells, red blood cells, and platelets. Paper No. 7, Ex. A, McDonald Aff.; Ex. B at pgs. 1-2. This condition increases the thickness and clotting of the blood, which can lead to strokes and heart attacks. To remove excess blood cells, Outlaw periodically underwent phlebotomy (drawing blood from a vein) to keep his hemocrit below

4

55%.[3] Paper No. 7, Ex. A. Defendants, through the Affidavit of P.A. McDonald, affirm that a normal hemocrit rate is between 42% and 54%. Outlaw was also evaluated for nephrotic syndrome, which is a group of symptoms, including protein in the urine and low blood protein levels, caused by various disorders that damages the kidneys.[4] Defendants state that in Outlaw's case the disorder would be his PV.

On March 1 and 2, 2009, Outlaw received Nubain, a synthetic opioid analgesic, twice a day, for pain in his back and abdomen. On March 3, 2009, Nurse Daniel Baumgardner evaluated Outlaw for his complaint of pain. He found that Outlaw was in no distress and did not display any signs of being in pain. *Id*., Ex. A; Ex. B at pg. 3. Baumgardner contacted P.A. McDonald, who prescribed one dose of Nubain. According to McDonald, Baumgardner gave Outlaw the Nubain at 12:15 p.m. McDonald also ordered a urinalysis, urine dipstick and an x-ray of Outlaw's kidneys, ureters, and bladder (KUB"). *Id*., Ex. A; Ex. B at pg. 4. Outlaw's urine dipstick showed a protein level of 30 mg. per 1200 milliliters of urine. McDonald states that normally urine is negative for protein and that Outlaw's KUB showed moderate fecal retention, especially over the left kidney, and a very small right renal calculi (kidney stone). *Id.*, Ex. A; Ex. B at pg. 5.

---

[3] According to Defendants, hemocrit is a test that measures the percentage of red blood cells found in the blood. The measurement depends on the number of red blood cells and the size of red blood cells.

[4] *See* http://www.nlm.nih.gov/medlineplus/ency/article/000490.htm

On March 11, 2009, nursing staff notified McDonald that Outlaw was still complaining of pain in his back and wanted pain medication. McDonald, who did not personally examine Outlaw that day, prescribed Nubain twice a day as needed for three days, and Vistaril, an anti-anxiety medication, three times a day for two weeks. Outlaw received Nubain once on March 11 and twice on March 12 and March 13, 2009. Paper No. 7, Ex. A; Ex. B at pgs. 6 & 43.

McDonald evaluated Outlaw on March 17, 2009, for his complaint of pain in his left testicle and to the right of his umbilicus (belly button). Outlaw did not appear to be in any distress. Upon palpation, Outlaw had moderate tenderness of the left testicle, but no nodules or palpable masses. McDonald prescribed Nubain twice a day for March 17, 2009 only. Outlaw requested and received Nubain at 9:00 p.m. that day. McDonald also prescribed Ultram, a narcotic-like pain reliever, 50 mg. twice a day for two weeks. Because Ultram is a non-formulary medication, McDonald was required to prepare a non-formulary medication request form and submitted it to the Regional Director for approval.[5] *Id*., Ex. A; Ex. B at pgs. 7-11.

On March 31, 2009, McDonald again evaluated Outlaw for his complaints of pain. Outlaw requested Nubain for pain, but did not mention to McDonald that he was still waiting to receive his prescribed Ultram. McDonald maintains that he became concerned about Outlaw's potential for abusing or becoming dependent on the Nubain because he requested pain medication on a regular basis with no clinical evidence of discomfort. *Id*., Ex. A; Ex. B at pg. 12. McDonald also observed that he seemed to be the only healthcare provider from whom Outlaw would request pain

---

[5] According to McDonald, non-formulary medications such as Ulram must be approved by CMS' Regional Director. Upon approval the form is faxed to Correct Rx Pharmacy Services, Inc., the Maryland Department of Public Safety and Correctional Services' offsite pharmacy contractor, which fills the prescription and sends it to the institution in the next routine medication delivery.

medication, raising the possibility of manipulative behavior.  McDonald renewed Outlaw's Vistaril prescription.

On April 2, 2009, Nurse Benjamin Brooksby evaluated Outlaw for his complaint of abdominal pain.  The examination revealed no abnormal findings except for abdominal tenderness in the left lower quadrant upon palpation.  Brooksby noted that Outlaw was able to walk with ease and that he was verbally aggressive and loud when leaving the clinic.  Paper No. 7, Ex. A; Ex. B at pgs. 13-14.  On April 6, 2009, Nurse Cynthia Rounds noted in the medical chart that the Ultram ordered by McDonald on March 17, 2009, had only just been approved and had arrived from Correct Rx Pharmacy Services, Inc.  Rounds informed McDonald that the Ultram had just arrived, but that his previous order had expired.  McDonald claims that this was the first time he was informed that Outlaw had not received the Ultram.  McDonald directed Rounds to renew the prescription as previously ordered for 14 days.  *Id*., Ex. A; Ex. B at pgs. 15 & 46.

Outlaw offered no complaints of abdominal pain until June 9, 2009.  On that day Nurse Erayana Long evaluated him for a subjective complaint of right upper quadrant pain.  Long referred Outlaw to a physician or P.A.  *Id*., Ex. A; Ex. B at pgs. 16-17.  Before he was seen, however, Outlaw filed a sick-call encounter form complaining of allergies, not abdominal pain.   He was evaluated for the allergy complaint by Nurse Baumgardner on June 23, 2009.  Outlaw indicated that he did not want to pay for the sick call and refused treatment.

On July 1, 2009, Outlaw was evaluated by McDonald for his complaint of quadrant pain and had a pain score of 8 on a scale of 1 to 10.  *Id.*, Ex. A; Ex. B at pg. 20. Outlaw's vital signs (blood pressure, pulse, and respiration) were taken and found to be within normal limits.  McDonald prescribed Nubain twice a day for three days, increased the Ultram dosage to 100 mg. twice a day

for 30 days, and added Atarax (another brand of Vistaril) to Outlaw's regimen at bedtime. Nubain was requested and given on three consecutive days. McDonald completed the non-formulary drug request form for Ultram on July 5, 2009, but claims the medication was not available until July 10, 2009, and was received twice a day until the prescription expired on July 29, 2009. He states that Dr. Ava Joubert extended the Ultram prescription until August 8, 2009, and Outlaw received the medication once or twice a day from August 3 to August 7, 2009. Paper No. 7, Ex. A.

McDonald evaluated Outlaw for his complaints of unrelieved pain on August 4, 2009. He informed McDonald that he had not received his Ultram for one month and stated that it helped his pain more than his current medication. McDonald completed the non-formulary request and renewed the Ultram prescription until September 8, 2009. *Id*., Ex. A; Ex. B at pgs. 22-24.

On August 14, 2009, Outlaw filed a sick-call request complaining of "bad" pain. Dr. Joubert prescribed Nubain and the medication was received for four days. On August 17, 2009, Dr. Colin Ottey prescribed Nubain twice a day as needed for several days.

On August 28, 2009, Outlaw came to the dispensary complaining of right lower quadrant abdominal pain. Nurse Una Johnson evaluated him, noted that his subjective pain was 9 out of 10, and objectively observed that his abdomen was soft and non-tender, he had bowel sounds in all quadrants, he had no fever, his skin was warm and dry, and his respirations were even and unlabored. Johnson noted that at the end of a two-hour observation in the dispensary, Outlaw's pain level decreased on its own to 7 out of 10. *Id*., Ex. A; Ex. B at pg. 28 . He received Nubain and was sent back to his housing unit, but was scheduled for a follow-up appointment the afternoon of the next day. The following afternoon Outlaw returned to the dispensary and stated that the nurse had given him the wrong medication and he was still suffering in pain. Nurse Allison Nardi evaluated

8

him and observed no physical signs of discomfort.  He was returned to his housing unit and was provided Nubain that day per his request.

On August 31, 2009, Outlaw came to the dispensary complaining of testicular pain and blood in his urine.  A dipstick test of the urine was positive for blood.  Outlaw also complained of right flank pain.  Nurse Wanda Diaz evaluated Outlaw and consulted with Dr. Ottey, who ordered the antibiotic Cipro, which is used to treat urinary tract infections. Paper No. 7, Ex. A; Ex. B at pg. 30 Ottey changed Outlaw's Ultram to an injection for three days.

McDonald saw Outlaw on September 1, 2009, for his complaint that he was accidentally given another patient's medication on August 28, 2009.  Outlaw could not remember what medication was at issue but complained that he had pain on the right side of his back.  McDonald added Toradol, a non-steroidal anti-inflammatory drug ("NSAID"), to Outlaw's prescription regimen for four days.  *Id*., Ex. A; Ex. B at pgs. 31-32.  On September 4, 2009, Outlaw again complained of pain and insisted on seeing a physician.  Dr. Monica Stallworth reviewed his chart, noted that Ultram had already been prescribed, and did not prescribe any additional pain medication.  On September 5, 2009, Ottey prescribed Nubain twice a day for three days as needed for Outlaw's pain. Paper No. 7, Ex. A; Ex. B at pg. 55.  On September 9, 2009, Tylenol #3 (with codeine) was added to Outlaw's pain medication regimen as needed and diagnostic testing was ordered   *Id*., Ex. A; Ex. B at pgs. 34-36 & 38-39. An abdominal x-ray showed moderate dilation of the proximal sigmoid colon due to fecal impaction and retention.  Kidney stones were not ruled out.  The radiologist's impression was a case of constipation.  A prescription for Ultram was renewed on September 15, 2009.  Defendants claim that Outlaw was released from the DOC on September 15, 2009.

Outlaw has been called upon to refute Defendants' exhibits to show a triable issue of fact regarding his pain medication regimen. He has failed to so do. The materials demonstrate that he received pain medications (Nubain, Ultram, Tramodol, and Tylenol #3) as needed for his complaints of pain. While it appears that there may have been some brief delays in Outlaw's receipt of Ultram, these delays occurred as part of the non-formulary drug approval and issuance procedure associated with the pharmaceutical contractor. In any event, the record shows that Outlaw received other pain medications and that McDonald was not placed on notice of the delay in receipt of the Ultram. When informed of the delay, he took corrective action to reorder the medication. Outlaw has failed to prove that the actions (or inactions) of McDonald or others evinces deliberate indifference.

III.   *Conclusion*

For the aforementioned reasons, Defendants' Motion to Dismiss or for Summary Judgment will be granted. Judgment is entered in favor of Defendants and against Outlaw. A separate Order follows.

Date:   February 5, 2010           _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge